IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:14-CV-043-MOC-DCK

| | |
|---|---|
| CELGARD, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| LG CHEM AMERICA, INC., and ) | |
| LG CHEM, LTD., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "LG Chem's Alternative Motion To Transfer Venue To The Eastern District Of Michigan In Whole Or In Part" (Document No. 230). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will <u>grant</u> the motion to transfer venue.

## BACKGROUND

Celgard, LLC ("Plaintiff" or "Celgard") initiated this action with the filing of a "Complaint For Patent Infringement" (Document No. 1) on January 30, 2014. The original Complaint asserts claims against LG Chem, Ltd. ("LG Chem") and LG Chem America, Inc. ("LGCAI") (together "Defendants") for: (1) direct infringement of U.S. Patent No. 6,432,586; and (2) induced infringement of U.S. Patent No. 6,432,586. (Document No. 1, pp.10-12).

The underlying U.S. Patent No. 6,432,586 (the "'586 patent"), as previously discussed by this Court,

> relates to "separators" used in the construction of high energy rechargeable lithium-ion batteries. Compl. ¶ 7, ECF No. 1; '586 Patent Abstract 1, ECF No. 1-A. These separators are designed to address "dendrite growth" in lithium batteries, a common problem associated with the high energy anodes used in such high energy batteries. Abstract 1:20-22. Dendrite growth penetrates the separator, creating direct contact between the anode and cathode within each cell of the battery, thereby causing "electronic" shorting of the battery. Abstract 1:22-31. A minimal amount of shorting may only reduce the efficiency of the battery; however, electronic shorting can also cause a phenomenon known as "thermal runaway" of the battery, a serious safety problem for rechargeable lithium batteries. Id. at 1:33-35. According to the Patent Abstract, the dendrite growth limits the commercial application of lithium-ion batteries. Id. at 1:36-39.
>
> The instant invention contemplates a separator designed to address these problems. Id. at 1:45-51. A ceramic composite layer is designed to block dendrite growth and prevent direct contact between the anode and cathode, and a polymeric micro-porous layer is designed to address "thermal runaway" in the event of contact between the anode and cathode. Id. at 2:52-60. A battery with such a separator is less likely to fail, catch fire, or experience a short, and is more likely to last longer. Pl. Mem. in Supp. Prel. Inj. 4, ECF No. 16. Celgard filed a patent application for the invention on April 10, 2000, and the Patent Office issued the patent on April 13, 2002.

(Document No. 128, pp.1-2).

The original Complaint generally alleges that LG Chem obtains uncoated polymeric base films from third parties and makes its own uncoated polymeric base films to which it applies a ceramic coating layer to create battery separators that fall within the scope of the '586 Patent. (Document No. 1, ¶¶ 10-12). The separators are then sold by LG Chem and/or LGCAI to third parties, or used in Defendants' own production of lithium-ion batteries, all allegedly in violation of the '586 Patent. (Document No. 1, ¶ 13). Plaintiff alleges that Defendants have knowingly infringed the '586 Patent and "know that their batteries containing the infringing separators are used by Defendants' customers to make notebook or laptop PCs, battery packs, tablets, electric

vehicles, and/or other products sold in the United States and North Carolina." (Document No. 1, ¶ 19).

On March 5, 2014, Plaintiff's "Motion For Preliminary Injunction" (Document No. 15) was filed. Then on March 19, 2014, "The LG Chem Defendants' Motion To Dismiss Plaintiff's Complaint For Lack Of Personal Jurisdiction" (Document No. 30) was filed. "Plaintiff Celgard, LLC's Alternative Motion For Jurisdictional Discovery" (Document No. 58) was filed on April 7, 2014. "The LG Chem Defendants' Alternative Motion To Transfer Venue To The Eastern District Of Michigan" (Document No. 71) was filed on April 23, 2014.

On May 14, 2014, the Honorable Max O. Cogburn, Jr. held a Motion Hearing on the aforementioned motions. During the hearing the Court primarily considered arguments on the issues of preliminary injunction and personal jurisdiction. See (Document No. 111). Judge Cogburn issued an "Order" (Document No. 128) on July 18, 2014, granting Plaintiff's "Motion For Preliminary Injunction" (Document No. 15) and "Plaintiff Celgard, LLC's Alternative Motion For Jurisdictional Discovery" (Document No. 58), and directing that "The LG Chem Defendants' Motion To Dismiss Plaintiff's Complaint For Lack Of Personal Jurisdiction" (Document No. 30) and "The LG Chem Defendants' Alternative Motion To Transfer Venue To The Eastern District Of Michigan" (Document No. 71) be referred to the undersigned Magistrate Judge "for consideration after jurisdictional discovery." (Document No. 128).

The undersigned issued an "Order" (Document No. 139) on July 21, 2014, setting limits and deadlines for jurisdictional discovery. On August 26, 2014, the undersigned issued an "Order And Memorandum And Recommendation" (Document No. 204) allowing Plaintiff to file an Amended Complaint incorporating the results of jurisdictional discovery, and recommending that the pending motions to dismiss and transfer (Document Nos. 30 and 71) be denied as moot.

Plaintiff's "First Amended Complaint" (Document No. 217) was filed on September 5, 2014. The Amended Complaint re-asserts claims for direct infringement and induced infringement of the '586 Patent by both Defendants, and adds claims against LG Chem for: unfair and deceptive trade practices; breach of contract; breach of the implied covenant of good faith and fair dealing; and, in the alternative, unjust enrichment. (Document No. 217, pp.25-35).

The new claims against LG Chem relate to Plaintiff's relationship with LG Chem as a supplier of "separator base film for all lithium-ion batteries manufactured by LG Chem for the electric vehicle industry." (Document No. 217, pp.1-2). Plaintiff alleges that "Defendants walked away from their prior commitments and chose to purchase, coat and sell infringing ceramic coated separator with base film from other suppliers, despite their knowledge that these actions infringed on Celgard's exclusive patent rights." (Document No. 217, p.2). Plaintiff's additional counts specifically contend that LG Chem is liable for its "repeated false promises to use Celgard as its exclusive and/or primary long-term supplier of base film for the electric vehicle industry." (Document No. 217, p.29).

"The LG Chem Defendants' Motion To Dismiss Counts III, IV, V, VI, Celgard's First Amended Complaint…" (Document No. 222); "LG Chem's Motion To Dismiss Plaintiff's First Amended Complaint For Lack Of Personal Jurisdiction" (Document No. 226); and "LG Chem's Alternative Motion To Transfer Venue To The Eastern District Of Michigan In Whole Or In Part" (Document No. 230) were filed on September 29, 2014. The pending motions have been fully briefed and are now ripe for review and disposition.

**STANDARD OF REVIEW**

The applicable statute here is 28 U.S.C. § 1404, which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

4

> district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). In addition, previous decisions by this Court are instructive.

> Even if venue in a jurisdiction is proper, a court may "for the convenience of parties and witnesses, in the interest of justice," transfer the action to another district where venue is proper. 28 U.S.C. § 1404(a) (2006). This court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on an "individualized, case-by-case basis" of convenience and fairness to the parties. AC Controls Co. v. Pomeroy Computer Res., Inc., 284 F.Supp.2d 357, 360 (W.D.N.C. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988)).

McLeod Addictive Disease Center, Inc. v. Wildata Systems Group, Inc., 3:08-CV-27-GCM 2008 WL 2397614, at *1 (W.D.N.C. June 10, 2008). "The Court emphasizes that the applicable law contemplates that a court's decision to transfer or not transfer venue under 28 U.S.C. § 1404(a) is largely discretionary." 3A Composites USA, Inc. v. United Industries, Inc., 5:13cv083-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

> When considering a motion to transfer, courts should consider, among other things, eleven factors: 1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws. Id. at 96. The factors are accorded different weights based on the court's discretion. Id.

Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 362 (W.D.N.C. 2003) (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C.

1990)); see also, Cohen v. ZL Technologies, Inc., 3:14cv377-FDW-DSC, 2015 WL 93732, at *1-2 (W.D.N.C. Jan. 7, 2015).

**DISCUSSION**

"While a court typically decides the question of personal jurisdiction over a defendant before considering venue, the Supreme Court has held that 'when there is a sound prudential justification for doing so, ... a court may reverse the normal order of considering personal jurisdiction and venue.'" BSN Medical, Inc. v. American Medical Products, LLC, 3:11cv092-GCM-DSC, 2012 WL 171269, at *2 (W.D.N.C. Jan. 20, 2012) (citing Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979)). "A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a)." Id. In this case, the Court finds good cause to allow Defendants' motion to transfer to the Eastern District of Michigan and will, therefore, decline to make any recommendation as to pending dispositive motions. See BSN Medical, 2012 WL 171269, at *1, n.1.

Plaintiff Celgard is a company organized under the laws of Delaware, with its headquarters in Charlotte, North Carolina. (Document No. 217, p.2). Plaintiff's parent company, Polypore International, Inc., is also headquartered in Charlotte, North Carolina. (Document No. 217, pp.1-2).

> Celgard is well-known internationally as a leader in the lithium-battery material industry. Celgard makes uncoated polymeric base film ("base film") that it sells to lithium-ion battery manufacturers. This base film essentially is an uncoated separator; some manufacturers simply use this base film as the separator in a lithium-ion battery, while other manufacturers (such as LG Chem) coat the base film to create a "coated separator" for use in their lithium-ion batteries.

(Document No. 217, p.3).

Defendant LG Chem is organized under the laws of the Republic of Korea, with is principal place of business in Seoul, Korea. (Document No. 217, p.3). Defendant LGCAI is a subsidiary of LG Chem and organized under the laws of Delaware, with its principal place of business in Englewood Cliffs, New Jersey. Id. "LG Chem is one of the world's largest manufacturers of lithium batteries" and manufactures lithium-ion batteries that are used in consumer electronics products and electric vehicles. Id.

Importantly, Defendants both concede that they are subject to personal jurisdiction in the Eastern District of Michigan. (Document No. 231, p.5). Defendants note the following pertinent facts: (1) LG Chem **sells the accused lithium-ion batteries to electric vehicle manufacturers residing in Eastern Michigan**, including General Motors, Ford Motor Company, and Chrysler; (2) all of LG Chem's subsidiaries, including LGCAI, have outposts in Michigan; (3) LGCAI maintains an office in Troy, Michigan, in the Eastern District; and (4) LG Chem employees visit the offices of their U.S. subsidiaries, and are familiar with their facilities in Troy, Michigan. Id.

So far, this Court has reviewed multiple briefs regarding jurisdiction in this matter, and considered oral arguments on the same. Moreover, the parties were allowed to conduct jurisdictional discovery prior to the filing of an Amended Complaint and renewed motions. Still, the question of personal jurisdiction presents a close call upon which reasonable minds could differ. Although this case presents a closer call, this Court recently rejected several of the same arguments by the same Plaintiff in Celgard, LLC v. SK Innovation Co., Ltd., 3:13cv254-MOC-DSC, 2014 WL 5430993 (W.D.N.C. Aug. 29, 2014) ("The fact that some of defendant's batteries may end up as a component in another manufacturer's device is simply not enough"). Unlike Celgard, LLC v. SK Innovation Co., Ltd., - which declined to address an alternative motion to transfer venue because the Court determined that the defendant was subject to suit in

7

multiple jurisdictions – it appears that the Eastern District of Michigan is the only venue where both Defendants would clearly be subject to personal jurisdiction. Celgard, LLC v. SK Innovation Co., Ltd., 2014 WL 5430993, at *2.

The undersigned is doubtful that this Court has personal jurisdiction over both Defendants with regard to all the claims asserted against them; however, as noted above, Defendants admit to jurisdiction in Michigan. See BSN Medical, 2012 WL 171269, at *4 (transfer appropriate even if venue is proper in this district). The undersigned also finds additional caselaw identified by Defendants to be instructive here: La Casa Real Estate & Inv., LLC v. KB Home of S.C., Inc., 2010 WL 2649867, at *2 (M.D.N.C. June 30, 2010) (granting motion to transfer "in the interests of convenience, fairness and judicial economy . . . before reaching any issues related to the Court's jurisdiction"); Nacco Materials Handling Grp., Inc. v. Lilly Co., 2011 WL 2119097, at *4 (E.D.N.C. May 25, 2011) (granting motion to transfer when personal jurisdiction over defendant remained "in serious doubt"); Waldron v. Atradius Collections, Inc., 2010 WL 2367392, at *3 (D.Md. June 9, 2010) ("[T]he constitutional question of personal jurisdiction is a close one upon which reasonable minds could differ. There is no reason to inject such a question into the case unnecessarily."); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 494 (E.D.N.C. 2006) (granting motion to transfer in part because "the absence of personal jurisdiction over the defendant" in the original forum but not the transferee forum is an "impediment to a decision on the merits"); Tyler v. Gaines Motor Lines, Inc., 245 F. Supp. 2d 730, 734 (D.Md. 2003) (transferring case in interest of justice because the question of personal jurisdiction was a "close one" and "would inject into the case an unnecessary legal issue that would render the entire litigation null and void, if, on appeal, jurisdiction were found to be lacking"); Datasouth Computer Corp. v. Three Dimensional Tech.,

Inc., 719 F. Supp. 446, 452 (W.D.N.C. 1989) ("Courts have held that a change of venue may conserve judicial resources, and serve the interests of the parties as well, if a case is transferred from a forum where there is a difficult question of personal jurisdiction or venue to a district in which there are not such uncertainties.")

In reaching a determination that this matter should be transferred, the undersigned has applied the factors identified in Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C. 1990).

**1. Plaintiff's initial choice of forum**

Although the choice of forum by the Plaintiff is ordinarily given considerable weight, "that weight is diminished when the conduct giving rise to the complaint did not occur in the forum." Hames v. Morton Salt, Inc., 3:11cv570-MOC-DSC, 2012 WL 1247201, at *2 (W.D.N.C. Apr. 13, 2012) (citing Parham v. Weave Corp., 323 F.Supp.2d 670, 674 (M.D.N.C. 2004); Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F.Supp.2d 741, 743 (E.D.Va. 2003); and Lynch v. Vanderhoef Builders, 237 F.Supp2d 615, 617 (D.Md. 2002)).

The conduct regarding the crux of Plaintiff's Amended Complaint, patent infringement, is alleged to have occurred throughout the United States. (Document No. 217, pp.4-11). The Amended Complaint specifically notes that "LG Chem regularly conducts business **throughout the United States directly and through** a number of wholly-owned subsidiaries, including without limitation **LG Chem Michigan, Inc., a Delaware corporation; LG Chem Power, Inc., a Michigan corporation**; and LG Chem America." (Document No. 217, p.9) (emphasis added).

Plaintiff assumes that infringing battery separators are contained in products that have sold in North Carolina. Id. In addition, Plaintiff notes that representatives of LG Chem have

9

made visits to North Carolina to discuss the parties' relationship regarding the sale of base film, and that some meetings may have included discussion about Plaintiff's patent rights and coated battery separators. (Document No. 217, p.7).

Although Plaintiff effectively notes some contacts with North Carolina by Defendant LG Chem related to the issues in this lawsuit, it appears that most, if not all, of the conduct giving rise to the complaint occurred in Korea or Michigan. (Document No. 248, p.5). Defendants contend they conduct substantial activity in Michigan, including manufacturing and sales. (Document No. 248, p.2). The undersigned weighs this factor as neutral.

**2**. **Residence of the parties**

Plaintiff is a resident of North Carolina. (Document No. 217, pp.2-3). LG Chem's principal place of business is Seoul, Korea and LGACAI's principal place of business is Englewood Cliffs, New Jersey. (Document No. 217, p.3). As noted, however, *all* of LG Chem's U.S. subsidiaries, including Defendant LGCAI, have "outposts" and/or offices in the Eastern District of Michigan, and Defendants contend they are "at home" in Michigan. (Document No. 231, p.7); see also, (Document No. 217, p.9). The undersigned weighs this factor slightly in favor of transfer.

**3**. **Access to evidence**

Plaintiff asserts that much of the proof in this case is located in North Carolina, including "relevant documents, contracts, and emails." (Document No. 243, p.5).

Defendants contend that "the bulk of relevant evidence is likely to come from LG Chem and its U.S. subsidiaries involved in the lithium-battery business and located in Michigan." (Document No. 248, p.2) (citing In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused

infringer."); In re Nintendo, 589 F.3d 1194, 1198 (Fed. Cir. 2009); and Nature's Energy Banc, Inc. v. Unified Holding Int'l, 2011 WL 3841638 (E.D. Mich. Aug. 30, 2011) (where case remained in the Eastern District of Michigan when the "most important [of the 11] factors," witness convenience, location of the evidence, and locus of the operative facts, favored venue in Michigan.)).

The undersigned finds that this factor favors transfer.

**4. Availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses**

Plaintiff specifically asserts that two (2) witnesses who are "knowledgeable about LG Chem and Celgard's relationship are located in North Carolina," the patent-in-suit's inventor Zhengming Zhang, who still works as Celgard's CTO, and its electric vehicle marketing director William Paulus. (Document No. 243, pp.5-6). Plaintiff argues that its costs will increase if it has to bring witnesses to trial in Michigan, but that Defendants' costs travelling from Korea or New Jersey or California to North Carolina are not significantly different than traveling to Michigan. Id.

Although Defendants fail to cite any specific witnesses, they contend that their "potential witnesses are likely numerous" and that none are in North Carolina. (Document No. 248, p.3). Defendants suggests that the combination of the presence of all its U.S. subsidiaries and many of its customers, including numerous fact witnesses, in Michigan favors that forum. (Document No. 248, p.2) (citing Zurich Am. Ins. Co. v. ACE Am. Ins. Co., 3:10-CV-101-RJC-DCK, 2010 WL 5014512 (W.D.N.C. Dec. 3, 2010) (citing convenience of non-party witnesses as the "more important factor" and accordingly is afforded "greater weight"). See also, Union First Market Bank v. Bly, 3:13cv316-GCM, 2013 WL 4455619, at *3 (W.D.N.C. Aug. 16, 2013) (quoting Hames, 2012 WL 1247201, at *3 ("[o]ften cited as the most important factor ... is the

11

convenience of witnesses, most particularly, non-party witnesses, who are important to the resolution of the case").

Despite allowing jurisdictional discovery in this matter, the facts regarding this factor appear less developed by either side than the Court might have hoped. Nevertheless, the undersigned is persuaded that Plaintiff's primary witnesses are employees who will require relatively minimal cost and inconvenience to bring to a trial in Michigan. Defendants' circumstances indicate that Michigan is more convenient, but the undersigned agrees with Plaintiff that travel from Korea or New Jersey to North Carolina and Michigan are roughly equivalent. More importantly, to the extent there are non-party witnesses in this matter, particularly customers and/or manufacturers of products including the allegedly infringing separators, and/or witnesses knowledgeable of Defendants' use of base film, the undersigned is persuaded they are more likely to be in Michigan or made available in the Eastern District of Michigan.

The undersigned concludes that this key factor favors transfer.

**5**. **Possibility of a view by the jury**

The undersigned is not persuaded that a view by the jury will be necessary, and thus concludes that this factor is neutral.

**6**. **Enforceability of a judgment**

The undersigned cannot foresee, and the parties have not identified, any concerns about the enforcement of a judgment by a U.S. District Court in North Carolina or Michigan. This factor is viewed as neutral.

**7**. **Relative advantages and obstacles to a fair trial**

Other than the previously mentioned issue regarding attendance of witnesses who are in Michigan, the undersigned does not foresee any clear advantages or obstacles to a fair trial. It appears reasonably likely that there will be witnesses in Michigan who cannot be compelled to appear in North Carolina; but few, if any, witnesses will not appear, if needed, in Michigan. As such, the undersigned finds this factor slightly favors transfer.

**8**. **Practical issues affecting trial expediency and efficiency**

"Trials are never easy, expeditious, or inexpensive." Century Furniture, LLC v. C & C Imports, Inc., 1:07cv179-DLH, 2007 WL 2712955, at * 5 (W.D.N.C. Sept. 14, 2007). Whatever this Court decides, there will be some air travel and inconvenience. Balancing all the evidence to date, the undersigned is persuaded this factor slightly favors transfer.

**9**. **Relative court congestion between the districts**

The parties have failed to provide any evidence regarding this factor. The undersigned notes that recent statistics suggest that the median interval for disposition of civil cases is about one (1) month faster in the Eastern District of Michigan than in the Western District of North Carolina; but that North Carolina has approximately 200 civil filings per district judge, while Michigan has approximately 207 civil filings per district judge. See http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/june-2014.aspx On balance, the undersigned is persuaded that the caseload for these courts is comparable and that this factor is neutral.

**10**. **The interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action**

This case involves allegations that implicate nationwide, if not international, wrongdoing. Both sides consist of sophisticated parties. Plaintiff is at home in North Carolina, and has added

13

state law claims with the Amended Complaint; however, any district court will be able to apply North Carolina law to the extent necessary. This factor is neutral.

**11. Avoidance of conflict of laws**

Plaintiff contends this "factor weighs strongly against transfer." (Document No. 243, pp.7-8). Plaintiff seems to suggest that a North Carolina court is better able to "determine which law it should apply to procedural or contract interpretation questions." The undersigned is not persuaded that a Michigan court, especially one assisted by the capable advocacy of Plaintiff's counsel, will have any more trouble than this Court determining which law to apply. The undersigned also finds this factor neutral.

Based on the foregoing, and in accordance with the teachings of <u>Jim Crockett Promotions, Inc. v. Action Media Group, Inc.</u>, the undersigned has conducted a quantitative and qualitative analysis of the foregoing factors, and finds that transfer is appropriate. <u>See</u> <u>Century Furniture, LLC</u>, 2007 2712955, at * 6.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that "LG Chem's Alternative Motion To Transfer Venue To The Eastern District Of Michigan In Whole Or In Part" (Document No. 230) is **GRANTED**, and this matter is **TRANSFERRED** to the United States District Court for the Eastern District of Michigan.

**SO ORDERED**.

Signed: February 18, 2015

David C. Keesler
United States Magistrate Judge